# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| CITY OF STOCKBRIDGE, GEORGIA; ELTON ALEXANDER; JOHN BLOUNT; URBAN REDEVELOPMENT AGENCY OF THE CITY OF STOCKBRIDGE,  )<br><br>PLAINTIFFS,  )<br><br>v.  )<br><br>TINA LUNSFORD, IN HER OFFICIAL CAPACITY, ET. AL.  )<br><br>DEFENDANTS.  ) | CIVIL ACTION NO.<br>1:18-CV-3961-LMM |

## PLAINTIFFS' RESPONSE TO THE INTERVENORS' SUPPLEMENTAL BRIEF REGARDING SECTION 7.15(h) OF ACT 548[1]

### I. INTRODUCTION

On September 24, 2018, the Parties in both this case and in <u>Capital One Public Funding, LLC v. Tina Lunsford, et al.</u>, Civil Action Case No. 1:18-CV-03938-LMM ("COPF Litigation"), presented oral argument on whether the November 6, 2018

---

[1] The Court combined this case with the COPF Litigation for the purposes of considering related motions for preliminary injunction. Intervenors' Supplemental Brief was filed solely in the COPF Litigation. Because these matters have been combined for the foregoing purpose, Plaintiffs respond here. "Intervenors" discussed here are three individuals who intervened in the COPF Litigation.

referendum to approve Act 548 of the 2018 Session of the Georgia General Assembly should be enjoined. Plaintiffs argued that Act 548 unconstitutionally impairs the bonded indebtedness between the City of Stockbridge ("Stockbridge") and COPF by removing half of Stockbridge's tax base into a proposed new City of Eagle's Landing. While admitting Act 548 had no significant and legitimate public purpose,[2] Intervenors nevertheless argued the annexation was constitutional and Eagle's Landing could take Stockbridge's tax base without being responsible for any of Stockbridge's municipal bond obligations.

The next day after oral argument, Intervenors filed a Supplemental Brief that radically abandons their prior position.[3] Intervenors' desperate eleventh-hour reversal (1) highlights the constitutional infirmities of the Act, (2) abandons Intervenors' prior arguments against preliminary injunction, and (3) is dead wrong.

Intervenors now argue Act 548 *does* require Eagle's Landing to assume the municipal bond debt at issue as Stockbridge's "successor in interest" to that debt. [Doc. 28: related case 1:18-CV-03938-LMM]. A plain reading of Act 548 and the relevant law does not support Intervenors' new argument.

---

[2] At oral argument Intervenors admitted there was no public purpose served by Acts 548 and 559.
[3] Intervenors' Supplemental Brief tacitly acknowledges that Act 548 is unconstitutional for all the reasons articulated by Plaintiffs and COPF.

Intervenors cite Act 548, subsection 7.15(h) – from a section entitled "Transition" – and argue it contemplates that "the Debt Agreement" "between [COPF], as assignee, and the City of Stockbridge" be assigned to Eagle's Landing as a "successor in interest." But Intervenors are wrong. The plain language of Section 7.15 does not support their argument, the "Debt Agreement" at issue is not the type of agreement that Section 7.15 addresses, and the relevant law precludes Intervenors' suggestion to the contrary. Intervenors' shift in position belies what is evident—Act 548 violates the Contracts Clauses of the United States Constitution and the Georgia Constitution and a preliminary injunction should issue.

## II.   ARGUMENT AND CITAITON OF AUTHORITIES

### A. ACT 548, SECTION 7.15(h) DOES NOT APPLY HERE

Act 548, Sec. 7.15(h) says: "[1] The City of Eagle's Landing shall be a successor in interest [2] to all intergovernmental agreements [3] which affect the territory contained within the corporate limits of the city which are in existence at the time the city is created." Intervenors' Supplemental Brief defines the "Debt Agreement" by reference to Capital One's Complaint, which defines the "Debt Agreement" as the Agreement of Sale between SURA and Stockbridge in which Stockbridge agreed to purchase and pay for Stockbridge City Hall. See Capital One Complaint at ¶ 39 and Ex. E, Sec. 101. The Stockbridge City Hall is solely within the "territory" of Stockbridge and it would remain in Stockbridge even after the

proposed creation of Eagle's Landing. Under the plain terms of Act 548, Sec. 7.15(h), the Stockbridge City Hall is not, and would never be, within the "territory" Eagle's Landing. Thus Section 7.15(h) could not reasonably apply.

It would be absurd and contrary to the statutory language to argue that the Georgia General Assembly would have intended for Eagle's Landing to replace Stockbridge as a "successor in interest" under this Sales Agreement and become the owner and financial obligor of property that would not lie within the territory of Eagle's Landing. Certainly Intervenors do not contend otherwise.

Moreover, what is at issue in this case is whether *Stockbridge* could continue to tax that portion of Stockbridge that would be de-annexed from Stockbridge and moved into Eagle's Landing. It is undisputed that Stockbridge could not tax such property and it is undisputed that Stockbridge would still be responsible for the municipal debt obligation for the Stockbridge City Hall without the ability to assess taxes on the ceded land. This is what makes Act 548 unconstitutional. But just because that tax base is at issue in this case, does not mean that it "affects the territory contained within the corporate limits" of the proposed Eagle's Landing. Indeed that is the point. The de-annexed property is no longer available to Stockbridge (or COPF) and the de-annexed territory is *unaffected* by the debt obligation. Intervenors' cursory "Supplemental Brief" does nothing to explain otherwise.

## B. ACT 548 DOES NOT ASSIGN ANY OF STOCKBRIDGE'S INDEBTEDNESS TO EAGLE'S LANDING

Intervenors appear to argue, without citation, that Section 7.15(h) would obligate Eagle's Landing to repay the municipal debt incurred by Stockbridge in connection with the Stockbridge City Hall. But Section 7.15 does not say this. Indeed, it does not address Stockbridge's municipal bond obligations in any way. Instead, Section 7.15 is entitled "Transition" and it clearly says that "a period of time will be needed for an orderly transition of *various government functions* from Henry County to the City of Eagle's Landing," without mentioning Stockbridge. (emphasis added). Subsection (h) clearly addresses the provision of government ***services*** to the residents of the potential City of Eagle's Landing. It does not deal with assigning bonded debt.

For example, the Henry County Police Department currently provides law enforcement services within the Eagle's Landing territory pursuant to an intergovernmental agreement between Henry County and the City of Stockbridge. Section 7.15(h) provides that the potential City of Eagle's Landing "shall be a successor in interest" to this police service "intergovernmental agreement" such that Henry County will continue providing police services to the jurisdiction upon the same terms and conditions under which it currently provides those services. This is the type of intergovernmental agreement that Section 7.15(h) addresses. It is absurd

to interpret Section 7.15 as also sneaking through a multi-million dollar debt transfer to which it does not refer or even allude. Nothing in the language of Section 7.15(h) even hints at what Intervenors now propose.

It is important to note that the statutory language used in Act 548, Section 7.15(h), sharply contrasts with the language used by the Georgia General Assembly to assign debt in the past. For example, when the General Assembly merged Campbell County into Fulton County in 1929, the relevant Act stated directly: "all bonded indebtedness of the County of Campbell is hereby made the valid binding obligation of the County of Fulton." Ga. Laws 1929, pg. 551, 552.[4] There is no remotely comparable statement contained in Act 548. Given the significance of the Stockbridge debt issue to all parties involved in the Eagle's Landing legislation process, the Court should view Intervenors' argument that the issue was indirectly addressed by Section 7.15(h) with great skepticism.

Furthermore, Intervenors purposefully ignore the enormous legal and practical problems that would be created by applying Section 7.15(h) to the Debt Agreement between the City of Stockbridge and COPF. For example, if Eagle's

---

[4] A true and correct copy of Act 179 of the 1929 Georgia General Assembly, which may be accessed at [http://metis.galib.uga.edu/ssp/cgi-bin/legis-idx.pl?sessionid=5bc7dc9f-b95b066710-1443&type=law&byte=157869939], is attached as Exhibit "A." See §3.

Landing is to be "a successor in interest to the covenants and obligations contained in [...the Debt Agreement]" as Intervenors suggest:

(a) Is Eagle's Landing responsible for 100% of the repayment obligations agreed to by the City of Stockbridge as its "successor in interest"—as there is no apportionment provision in Section 7.15(h)?

(b) If Eagle's Landing is responsible for only a percentage of the debt, how much debt is it liable for—as Section 7.15(h) is silent on this point?

(c) Is the liability for the municipal bonds "joint and several"? If it is, then Stockbridge would still be responsible for the entire debt amount and the Contracts Clause impairments would still exist as it would still be without its pledged tax base to meet the debt obligations.

(d) Would Eagle's Landing become the sole owner of Stockbridge City Hall which is not in its territory? And could Eagle's Landing then convert or sell that property for some other use?

Should the Court supply an answer to these questions, it would be re-writing Act 548—something which it cannot do. As the United States Supreme Court has held, a federal court must "restrain [itself] from rewriting state law to conform it to constitutional requirements." Ayotte v. Planned Parenthood of Northern New England, 546 U.S. 320, 329 (2006); see also Reyes v. N. Texas Tollway Auth., 186 F. Supp. 3d 621, 632 (N.D. Tex. 2016), aff'd, 861 F.3d 558 (5th Cir. 2017) ("The

courts may not legislate in order to fill any hiatus left by the legislature."); Indep. Living Ctr. of Southern California v. City of Los Angeles, Cal., 973 F. Supp. 2d 1139, 1152 (C.D. Cal. 2013) ("The court may not legislate by adding remedies not contemplated by [the legislature]."); Matter of Wildman, 30 B.R. 133, 168 (Bankr. N.D. Ill. 1983) ("[i]f the Supreme Court cannot legislate, certainly the district courts cannot") (quoting Blount v. Rizzi, 400 U.S. 410, 419 (1971) ("it is for [the legislature], not this Court, to rewrite the [unconstitutional] statute")). Intervenors desperately want the Court to re-write Section 548 in a manner that was not intended by the General Assembly.[5] But given Act 548's patent unconstitutionality, it can only hold the Act unconstitutional.

### C. IF ACT 548 CALLED FOR THE ASSIGNMENT OF DEBT IT WOULD VIOLATE THE GEORGIA CONSITUTION

Georgia Constitution, Art. III, §V, ¶III, mandates that "no bill shall pass which . . . contains matters different from what is expressed in the title thereof." The title

---

[5] Had the Georgia General Assembly intended to transfer or apportion the debt it could have done so but would have had to do so explicitly as the United States Supreme Court directed long ago. See, e.g., Town of Mt. Pleasant v. Beckwith, 100 U.S. 514, 528 (1879) (when the legislature creates a new town out of a part of the territory of an old one, without expressly making provision for the payment of the debts antecedently contracted, "it is settled law that the old corporation retains all the public property not included within the limits of the new municipality, and is liable for all the debts contracted to her before the act of separation was passed"). This "settled law" does not relieve a state legislature from the limitations of the Contract Clause where bonded debt is involved. See: e.g. Mobile v. Watson, 116 U.S. 289 (1886).

of Act 548 does not identify Stockbridge's debt as a subject of the Act. Indisputably, the title of Act 548 says nothing about Stockbridge whatsoever. The only reference in the title of Act 548 to bonds or debt is the clause "to provide for bonded and other indebtedness," which plainly refers to Section 6.19 authorizing the potential City of Eagle's Landing to issue general obligation bonds. The portion of Act 548's title that relates to Section 7.15 states simply "to provide for transition of powers and duties." In contrast to the challenged Act here, the 1929 legislation to combine Campbell and Fulton Counties included in its title its intent "to make the valid contracts of Campbell County the valid contracts of Fulton County." Ga. Laws 1929, pg. 551.

An act that contains in the body a subject matter not announced in its title is void. Brown v. Clower, 225 Ga. 165 (1969). Therefore, even if Intervenors' argument about Section 7.15(h) of Act 548 could save the Act from violating the Contract Clause, it would cause the Act to be void anyway for violating Georgia Constitution Art. III, §V, ¶III. However, Plaintiffs urge that the correct interpretation of Act 548 is that it does not address Stockbridge's bonded indebtedness at all, thus violating the Contracts Clause and rendering the Act null and void.

## D. **INTERVENORS HAVE NO AUTHORITY TO BIND EAGLE'S LANDING**

Intervenors are three ***individuals*** with no official capacity or authority relative to the potential new City of Eagle's Landing. Intervenors may find it convenient, in the context of this litigation, to commit Eagle's Landing to repaying the City of Stockbridge's indebtedness. But Intervenors have no authority to do so. The actual officials of the potential City of Eagle's Landing, if and when they are elected, would likely be very displeased with having been committed to a debt Eagle's Landing did not authorize or approve. Indeed, these elected officials would likely disagree (both factually and legally) with the Intervenors and refuse to voluntarily make payments under the Debt Agreement. Moreover, the potential future City of Eagle's Landing – an entity that currently does not exist – would not be bound by any order of this Court since it is not a party to this litigation.

Intervenors' successor-in-interest argument is expedient for them today, but, if accepted by the Court, would do nothing more than postpone a decision to then be litigated in the future with the City of Eagle's Landing as a party. Critically, such litigation could only occur <u>after</u> the irreparable harm attendant to the Eagle's Landing incorporation referendum had already been visited upon Plaintiffs and Capital One.

### III.     **CONCLUSION**

The Court should reject Intervenors' desperate last-minute interpretation of Act 548 and determine that the Act, which Intervenors admit has no legitimate public purpose, violates the Contract Clause. Act 548 contains no expression of intent to transfer Stockbridge's debt to Eagle's Landing. Even if it did, the title of Act 548 indisputably does not express such a purpose, so the Act cannot be effective to transfer debt under the Georgia Constitution. Finally, the City of Eagle's Landing is not a party here and therefore the Court accepting Intervenors' argument could not provide relief to Stockbridge or Capital One.

Respectfully submitted this 3rd day of October, 2018

| BALCH & BINGHAM, LLP | WILSON, MORTON & DOWNS, LLC |
|---|---|
| | By: /s/Stephen G. Quinn |
| Michael J. Bowers | Robert E. Wilson |
| Georgia Bar No. 071650 | Georgia Bar No. 768950 |
| Christopher S. Anulewicz | Stephen G. Quinn |
| Georgia Bar No. 020914 | Georgia Bar No. 153012 |
| | Michael J. Williams |
| | Georgia Bar No. 763239 |
| *Attorneys for the Plaintiffs* | *Attorneys for the Plaintiffs* |
| 30 Ivan Allen Blvd., N.W. | 125 Clairemont Avenue |
| Suite 700 | Two Decatur TownCenter, Suite 420 |
| Atlanta, GA 30308-3036 | Decatur, GA 30030 |
| (404) 261-6020 Telephone | (404) 377-3638 Telephone |
| (404) 261-3656 Facsimile | (404) 377-3533 Facsimile |
| mbowers@balch.com | bwilson@wmdlegal.com |
| canulewicz@balch.com | squinn@wmdlegal.com |
| | mwilliams@wmdlegal.com |

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 7.1(D) of the Local Rules of the Northern District of Georgia, the undersigned counsel for Plaintiff Larry Kidwell hereby certifies that the foregoing document was prepared in a font and point election approved by this Court and authorized in Local Rule 5.1(C).

*/s/ Stephen G. Quinn*
Stephen G. Quinn
Georgia Bar No. 153012

## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorney of record:

Patrick Jaugstetter, Esq.
Power-Jaugstetter, PC
P.O. Box 70
108 Atlanta Street
McDonough, GA  30253
patrick@powerjaug.com

*Attorney for Defendants Tina Lunsford, Andy Calloway, Mildred Schmelz, Jon Kirkpatrick, Dan Richardson, and Arch Brown*

Dated:  October 3, 2018.

/s/ Stephen G. Quinn
Stephen G. Quinn
Georgia Bar No. 153012