IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CITY OF STOCKBRIDGE, GEORGIA et al. | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) CIVIL ACTION NO. ) 1:18-CV-3961-LMM |
| TINA LUNSFORD, et al. | ) ) |
| Defendants. | ) ) ) |

**PLAINTIFFS' REPLY TO STATE DEFENDANT'S RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION**

## I. INTRODUCTION

The Georgia Attorney General's Response to Plaintiffs' Motion for Preliminary Injunction (1) does not articulate a significant public purpose for Acts 548 and 559 and (2) does not counter Plaintiffs' showing that they are substantially likely to succeed on the merits. Plaintiffs' Motion should be granted.

## II. ARGUMENT AND CITATION OF AUTHORITY

### A. Plaintiffs Are Likely to Succeed on Their Contract Clause Claim

#### 1. Attorney General Has Not Stated Significant Public Purpose

On September 25, 2018, the Court ordered the Attorney General to address "whether the State had a public purpose in enacting these Acts" for purposes of the

Court's analysis of Plaintiffs' Contract Clause claim.  [Doc. 24].  The Court also said the Attorney General "may raise any immunity arguments in that brief, if he so chooses."  The Attorney General tellingly spent ten pages of his 36-page Response brief addressing the latter issue and only three pages on the former.

The Attorney General completely failed to suggest a legitimate public purpose for the challenged Acts.  Instead, he merely argues municipalities are creatures of the State and "issues regarding the existence, boundaries, and powers [to contract] of municipalities are strictly matters for determination of the General Assembly," and he cites cases standing for this irrelevant proposition.  Response at 31-33.  Plaintiffs have never questioned the General Assembly's authority to adjust the boundaries of municipalities.  However, the General Assembly must do so constitutionally.  See Schneider v. City of Folkston, 207 Ga. 434, 435 (1950); Strurm v. Ruger & Co., Inc. v. City of Atlanta, 253 Ga. App. 713, 720 (2002).  And as previously presented to the Court, there has been virtually no instance when a court found the impairment of a municipal bond obligation to be justified by a "significant public purpose."  See, e.g., Continental Illinois Nat'l Bank and Trust v. State, 696 F.2d 692 (9th Cir. 1983); Pierce County v. State, 159 Wash. 2d 16 (2006); Kurrus v. Priest, 342 Ark. 434 (2000); Tyrpak v. Daniels, 124 Wash. 2d 146 (1994); see also United States Trust Co. of New York v. New Jersey, 431 U.S.

1, 27 (1977) (noting only time this century Court sustained alteration of a municipal bond contract was in 1942 when a bankrupt local government was placed in receivership and a plan was approved to protect creditors).

Further, the public purpose justification for a statutory impairment of a contractual obligation applies only if the statute was intended as the State's exercise of its police power to safeguard vital and broad societal interests, and not merely as a "benefit to special interests." All Star, Inc. v. Georgia Atlanta Amusements, LLC, 332 Ga. App. 1, 9, 12 (2015); Vesta Fire Ins. Corp. v. State of Fla., 141 F.3d 1427, 1434 (11th Cir. 1998). No vital and broad societal interest was identified by the Attorney General whatsoever. Indeed, "what is particularly striking is the *absence* of any reasonable police justification" offered by the Attorney General. Tyrpak, 124 Wash. 2d at 156 (emphasis in original).

The Attorney General fails to explain how legislative acts with a limited life span that are designed to carve a new city out of an existing one – at the behest and for the benefit of a handful of specially interested individuals dissatisfied with the evolving "demographics" of Stockbridge – is an exercise of the State's police power designed to safeguard vital and broad societal interests or "to protect the lives, health, morals, comfort and general welfare of" all of Georgia's citizens. Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 241 (1978). Given the

Attorney General's inability to articulate any public purpose when specifically directed by the Court to do so, and given the Intervenors' express admission of the lack of any public purpose during the September 24, 2018 hearing [Doc. 24 at n.1], it is undisputed there is no "significant and legitimate public purpose behind the" Acts.  S&M Brands, Inc. v. Georgia ex rel. Carr, 230 F. Supp. 3d 1338, 1345 (N.D. Ga. 2017).  Plaintiffs' Motion for Preliminary Injunction should be granted.

    2.    The Acts Substantially Impair Contractual Relationships

In their initial Memorandum and at oral argument Plaintiffs fully explained the manner in which the Acts will substantially impair their bond contracts.  In response, the Attorney General argues Plaintiffs will not be harmed because (1) the City of Eagle's Landing will be "a successor in interest to all intergovernmental agreements" affecting its territory, and (2) Stockbridge assumed the risk when it entered its bond contracts that the State might one day modify its municipal boundaries.  See Response at 27-30.  As Plaintiffs have already showed the Court, these arguments are completely without merit.

    a.    Eagle's Landing is Not a "Successor in Interest" to the Bonds

The Attorney General argues Plaintiffs will suffer no impairment of their contractual rights because Section 7.15(h) of Act 548 would obligate Eagle's Landing to become the "successor in interest" for purposes of repaying

4

Stockbridge's bond debt.  See Response at 28.  Plaintiffs fully rebutted this contention when it was raised by the Intervenors [Doc. 30], and Plaintiffs adopt and incorporate that argument here.  Briefly, (1) Section 7.15(h) does not apply because the bonds at issue would not "affect territory within the corporate limits" of Eagle's Landing; (2) Section 7.15(h) applies only to the "Transition" of "government functions [and services] from Henry County to the City of Eagle's Landing," not to the transfer of municipal bond debt; (3) when the General Assembly has assigned debt in other legislation, it has done so expressly and that was not done here; (4) interpreting Section 7.15(h) to transfer the municipal bond debt would be absurd given the enormous unanswered questions and problems that would arise from such an interpretation; (5) interpreting Section 7.15(h) as proposed by the Attorney General would impermissibly rewrite Act 548; (6) interpreting Section 7.15(h) as proposed by the Attorney General would violate Georgia Constitution Art. III, §V, ¶III; and (7) the proposed interpretation would likely be rejected by a future Eagle's Landing.  See generally [Doc. 30].

        b.    Stockbridge Could Not Have Anticipated Acts 548 and 559

The Attorney General also argues Plaintiffs' contract rights have not been impaired because they entered into the bond contracts assuming the risk the State might one day modify Stockbridge's municipal boundaries.  See Response at 29-

5

30. This argument fails for several reasons. First, the State's powers are constrained by the Constitutional prohibitions against impairing contracts. Plaintiffs could not anticipate the State would act in an unconstitutional manner.

Second, Plaintiffs are not in a regulated industry that is subject to frequent regulatory changes such that they reasonably should have anticipated changes that might impair their contracts. See Energy Reserves Group, Inc. v. Kansas Power & Light Co., 459 U.S. 400, 411 (1983) (state law preventing natural gas producer from charging higher prices than its contract allowed did not substantially impair contract because natural gas production is heavily regulated industry and producer should have expected changes in regulations that might affect its contract); S&M Brands, Inc., 253 F. Supp. 3d at 1195 (plaintiff knew when it executed agreement that tobacco manufacturing and sales is a heavily regulated industry and changes in regulations could affect its agreement).

Finally, never in the history of this State has a new municipality constitutionally been created by carving it out of the boundaries of an existing municipality. The Attorney General's contention that Plaintiffs nevertheless should have anticipated such an unprecedented event when they entered into the bond contracts is absurd.

### 3. The Injury to Plaintiffs Outweighs Any Harm to Defendants

The Attorney General's only argument as to the harm Defendants might face if an injunction is issued is that it will cost Henry County more money if the referenda votes are delayed and the county has to schedule a subsequent election. See Response at 35. This is an argument even the Henry County Defendants have eschewed. See [Doc. 21 at 2-3] (noting steps taken for referendum and "[n]o further substantive efforts are required on the part of the Defendants until the votes have been cast and are ready to be tallied," and "Defendants stand ready to proceed with the Referendum as called for under the Act and stand equally ready to cease such efforts if ordered by this Court"). Further, as Plaintiffs pointed out in their initial Motion, Act 559 § 3-2 and Act 548 § 7.16 expressly contemplate a delay in the referenda and provide, in that event, for the referenda to be held as soon as possible after November 6, 2018. Thus, Defendants will not be harmed at all by the requested injunction.

### 4. Plaintiffs Properly Brought § 1983 Contract Clause Claim

The Attorney General argues Plaintiffs cannot assert a Contract Clause claim under Section 1983, relying on Carter v. Greenhow, 114 U.S. 317 (1885), and two

circuit court cases.[1]  See Response at 21-25.  As the Supreme Court and countless other courts have held, Carter does not support this proposition.

The Carter Court affirmed the dismissal of the plaintiff's action upon the limited ground that he failed to state a Contract Clause claim under the precursor to

---

[1] The Attorney General cites Crosby v. City of Gastonia, 635 F.3d 634, 639-41 (4th Cir. 2011), and Kaminski v. Coulter, 865 F.3d 339, 345-48 (6th Cir. 2017).  In Kaminski, the Sixth Circuit held a violation of the Contract Clause cannot give rise to a Section 1983 claim. The court reasoned that its conclusion reconciles the Supreme Court's holdings in Carter and Dennis with the text and history of Section 1983 and the principle that "it is [the Supreme Court's] prerogative alone to overrule one of its precedents." Kaminski, 865 F.3d at 347.  However, the text and history of Section 1983 support the opposite conclusion, and allowing a Contract Clause claim to be brought under Section 1983 is consistent with Carter.  The text of Section 1983 speaks of "*any* rights, privileges, or immunities secured by the Constitution." Dennis, 498 U.S. at 443 (emphasis in original).  There is no limiting language purporting to exclude certain constitutional provisions.  Further, the Supreme Court has repeatedly held Section 1983 should be broadly construed and, as the Supreme Court noted in Dennis, Carter only held "as a matter of pleading" that the plaintiff did not make out a Contract Clause claim. Dennis, 498 U.S. at 443, 451 n.9 (internal quotations omitted).  In Crosby, the Fourth Circuit minimized the Supreme Court's footnote in Dennis, indicating the "narrow reading accorded Carter was intended to address the usefulness of that case in providing a framework for the analysis of Section 1983 claims invoking [other constitutional provisions or federal laws]," but that Carter stands for the proposition Contract Clause claims cannot be brought under Section 1983. Crosby, 635 F.3d at 641.  The Supreme Court's footnote in Dennis is more properly read to indicate Carter does not stand for the proposition that Contract Clause claims cannot be brought under Section 1983.  At the time of Dennis, there was a circuit split as to whether a Commerce Clause claim could be brought under Section 1983, and the Supreme Court clearly held it could.  Given the statute's text and history, there is no reason Contract Clause claims should be treated differently.

Section 1983 because he only pleaded a breach of contract claim and did not seek to invalidate an allegedly unconstitutional state law. See 114 U.S. at 322-23.  In so doing, the Carter Court implicitly recognized a Contract Clause claim may be brought under Section 1983 assuming a properly pleaded complaint.

Indeed, the U.S. Supreme Court has repeatedly given Carter "a narrow reading, stating that the case 'held *as a matter of pleading* that the particular cause of action set up in the plaintiff's pleading was in contract and was not to redress deprivation of the 'right secured to him by that clause of the Constitution' (the contract clause), to which he had 'chosen not to resort.'" Dennis v. Higgins, 498 U.S. 439, 451 n.9 (1991) (quoting Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 613 n.29 (1979)) (emphasis supplied); see also Hague v. Comm. for Indus. Org., 307 U.S. 496, 527 (1939) (same); Lovejoy Realty, LLC v. Clayton County, No. 1:08-CV-3750-ODE, 2009 WL 10699711, at *3 (N.D. Ga. Nov. 6, 2009) ("the precedential value of [Carter] is somewhat murky").

Since the Supreme Court's decision in Dennis, courts across the country, including a federal district court in the Eleventh Circuit, have authorized claims under Section 1983 for violations of the Contract Clause. See, e.g., Southern Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 887 (9th Cir. 2003) (per curiam) ("The right of a party not to have a State, or a political subdivision thereof, impair

its obligations of contract is a right secured by the first article of the United States Constitution. A deprivation of that right may therefore give rise to a cause of action under section 1983."); Parella v. Ret. Bd. of Rhode Island Employees' Ret. Sys., 173 F.3d 46, 62 (1st Cir. 1999) (considering merits of Contract Clause claim brought under Section 1983); Larsen v. Senate of Com. of Pa., 154 F.3d 82, 91 (3rd Cir. 1998) (holding plaintiff's Section 1983 claim alleged violation of clearly established right under Contract Clause); Mease v. City of Shawnee, No. 03-2041, 2003 WL 23498473, at *2-3 (D. Kan. Oct. 2, 2003) (concluding Contract Clause may give rise to § 1983 cause of action); Storer Cable Communications v. City of Montgomery, Ala., 806 F. Supp. 1518, 1529 (M.D. Ala. 1992) (expressly holding plaintiffs' Contract Clause claim was cognizable under § 1983); Indiana Dept. of State Revenue v. Fort Wayne Nat. Corp., 649 N.E.2d 109, 114-15 (Ind. 1995) (treating Contract Clause claim as actionable under § 1983); cf. Christiansen v. County of Douglas, 849 N.W.2d 493 (Neb. 2014) (rejecting Contract Clause claim on merits without addressing whether it could be brought under § 1983).

That a Contract Clause claim may be brought under Section 1983 is further evidenced by the Supreme Court's holdings in Dennis that, "[a] broad construction of § 1983 is compelled by the statutory language, which speaks of deprivations of '*any* rights, privileges, or immunities secured by the Constitution and laws'" and

that Section 1983 "should be 'liberally and beneficently construed.'" 498 U.S. at 443 (citing Golden State Transit Corp. v. City of Los Angeles, 493 U.S. 103, 105 (1989), and quoting Monell v. New York City Dept. of Social Services, 436 U.S. 658, 684 (1978)) (emphasis in original). While the Eleventh Circuit has not directly addressed this issue, the great weight of authority supports Plaintiffs' position.[2]

### B.    The Attorney General's Other Arguments are Without Merit

The remaining arguments in the Attorney General's Response are more appropriately addressed in a motion to dismiss, which the Attorney General has not filed. Given the 15-page limit of this Reply, Plaintiffs briefly show why the Attorney General's remaining arguments are groundless.

---

[2] Even if the Court were to disagree, although Plaintiffs' Second Amended Complaint seeks a declaration that Acts 548 and 559 are unconstitutional, Plaintiffs are filing an amended complaint expressly asserting a claim under the Declaratory Judgment Act seeking a declaration that Acts 548 and 559 violate the Contract Clause. See James v. Bartow County, Georgia, No. 1:16-CV-01381-WSD, 2017 WL 748738, at *3 (N.D. Ga. Feb. 27, 2017) ("Because the First Amended Complaint was not filed by the Plaintiff as 'a matter of course' but upon an Order of the Court, the Court finds that Plaintiff's court-ordered First Amended Complaint did not qualify as Plaintiff's amendment allowed as a matter of course under Rule 15. Plaintiff thus was entitled to file an amended complaint as a matter of course, as long as it filed the amended complaint within the time limits prescribed by Rule 15.")

1.      Plaintiffs' Claims are Not Barred by the Eleventh Amendment.[3]

The Attorney General argues the Ex parte Young exception to Eleventh Amendment immunity does not apply here because he has no connection with enforcement or administration of the Acts.  See Response at 9.[4]  The Georgia Supreme Court has interpreted the laws enumerating the Attorney General's duties as empowering him, among other things, "to make certain that state laws are faithfully enforced; … to initiate legal proceedings to protect the State's interests; … [and to] ensure that the State's interests are defended in legal actions …." Perdue v. Baker, 277 Ga. 1, 5 (2003).  The Attorney General's statutory duties,

---

[3] The Attorney General enjoys no Eleventh Amendment immunity as to Plaintiffs' other claims, particularly for violation of Section 2 of the Voting Rights Act.  See Lewis v. Governor of Ala., 896 F.3d 1282, 1292-93 (11th Cir. 2018); Ga. State Conf. of NAACP v. State, 269 F. Supp. 3d 1266, 1274 (N.D. Ga. 2017).  Further, the Attorney General's arguments that he is protected by the Eleventh Amendment and by sovereign immunity from Plaintiffs' claim under the Georgia Constitution (see Response at 13-16) are irrelevant for purposes of Plaintiffs' Motion for Preliminary Injunction, because Plaintiffs are substantially likely to succeed on their federal Contract Clause claim, as explained above.  And the Attorney General is not entitled to immunity for state law claims when he is sued in his individual capacity.  See Lathrop v. Deal, 301 Ga. 408 (2017).

[4] While there do not appear to be any controlling cases from Georgia's state or federal courts, courts in other states have specifically held the state attorney general is a proper party in Contract Clause cases.  See Southeast Louisiana Bldg. & Const. Trades Council, AFL-CIO v. State of Louisiana, No. CIV.A. 13-370, 2013 WL 6709750, at *10 (E.D. La. Dec. 18, 2013); Equip. Mfrs. Inst. v. Janklow, 88 F. Supp. 2d 1061, 1064 (D.S.D. 2000); see also Henderson Co. v. Thompson, 300 U.S. 258, 261, 266 (1937).

therefore, include making certain Acts 548 and 559, enacted by the Georgia General Assembly, are faithfully enforced and implemented according to their terms. He is accordingly a proper party under Ex parte Young. See, e.g., Lewis., 896 F.3d at 1291-92. The Attorney General cites no authority for the proposition he has no connection with enforcement of Acts 548 and 559 because they are "local legislation."[5]  See Response at 11. The Eleventh Circuit's opinion in Summit Med. Associates, P.C. v. Pryor, 180 F.3d 1326 (11th Cir. 1999), does not support his argument, because Plaintiffs are not challenging a private civil enforcement provision embodied within a statute; rather, Plaintiffs are challenging Acts 548 and 559 in their entireties as violating the federal constitution.

2. Plaintiffs' Claims Against the Attorney General Are Ripe

In their Response to the Court's September 17, 2018, Order [Doc. 20], Plaintiffs thoroughly addressed the reasons this matter is ripe for review and showed the unsoundness of the Attorney General's argument that this matter is not ripe simply because the referenda "may not be approved". See Response at 17-21. Given that the only persons authorized to vote in the referenda are those residing

---

[5] Technically these Acts are not "local legislation," because they were passed by the entire General Assembly. Rather, they are "general laws" with "local application." See, e.g., Morrison v. Cook, 146 Ga. 570 (1917) ("A law may assume a general nature, within the meaning of the Constitution, from its subject–matter, notwithstanding it may have only local application.")

within the proposed City of Eagle's Landing, who will benefit from the elimination of their share of the bond debt while gaining the lucrative property de-annexed, the outcome is relatively sure – the referenda will pass and Stockbridge's land will be de-annexed into Eagle's Landing.

Even if the outcome of the referendum were genuinely uncertain, the pendency of a referendum election does not preclude a court from considering a constitutional challenge to the law creating the referendum.  See Bruck v. City of Temple, 240 Ga. 411, 413 (1977).[6]  The Attorney General attempts to distinguish Bruck by contending the referendum election in that case had already occurred, therefore obviating the Court's need "to thoroughly analyze the ripeness issue." Response at 19.  The Georgia Supreme Court did not have to "thoroughly analyze" the ripeness question – under facts strikingly similar to those presented in this case – because it is beyond dispute that an action seeking to enjoin a referendum election and have a local Act declared unconstitutional is ripe for review when, as

---

[6] The Attorney General's citation to a case from Nebraska cannot overcome this binding precedent of the highest Court of *this* State.  See Response at 19.

here, the election superintendent has issued the call for the election, thereby setting in motion the series of events inevitably leading to the election.[7]

## III. CONCLUSION

For the foregoing reasons, Plaintiffs request the Court to grant them the relief sought in their Motion for Preliminary Injunction.

Respectfully submitted this 11th day of October, 2018.

/s/ Christopher S. Anulewicz
Michael J. Bowers
Georgia Bar No. 71650
Christopher S. Anulewicz
Georgia Bar No. 020914
**BALCH & BINGHAM LLP**
30 Ivan Allen Jr. Blvd. N.W., Suite 700
Atlanta, Georgia 30308
Telephone: (404) 261-6020
Facsimile: (404) 261-3656

*Attorneys for Plaintiffs*

---

[7] The Attorney General's argument also ignores the fact the Acts are presently law and certain provisions of the Acts, including those related to the November referendum, are already in effect.  See Act 548 § 7.14(a).

## CERTIFICATE OF COUNSEL REGARDING FONT SIZE

Counsel certifies that the foregoing has been prepared using Times New Roman font size 14 in accordance with Local Rules 5.1(B)(3) and 7.1(D).

This 11th day of October, 2018.

/s/ Christopher S. Anulewicz
Christopher S. Anulewicz
Georgia Bar No. 020914

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been filed with the Court using the CM/ECF system which will automatically send e-mail notifications of such filings to the all attorneys of record on this 11th day of October, 2018.

/s/ Christopher S. Anulewicz
Christopher S. Anulewicz
Georgia Bar No. 020914